IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19 - |
| v. | : | Date Filed: January 22, 2019 |
| GEORGE PELTZ | : | VIOLATIONS:<br>26 U.S.C. § 7201 (tax evasion - 1 count) |
| | : | 26 U.S.C. § 7202 (failing to pay over payroll taxes - 1 count) |
| | : | 18 U.S.C. § 664 (theft from employee benefit plans - 1 count) |
| | : | 29 U.S.C. § 186(a)(2) & (d)(2) (unlawful payments to a union official - 1 count) |

## INFORMATION

### COUNT ONE

### TAX EVASION
### 26 U.S.C. § 7201

THE ACTING UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information:

1. Defendant GEORGE PELTZ was an owner and operator of MJK Electric ("MJK"), an electrical contracting company with offices in the Eastern District of Pennsylvania and New Jersey. MJK served customers primarily in Philadelphia and employed approximately 40 people.

2. MJK was an S corporation, which filed a yearly Internal Revenue Service ("IRS") Form 1120S, U.S. Income Tax Return for an S Corporation, but which passed corporate revenue, income, losses, deductions, and credits through to its shareholders for federal tax purposes. Thus, defendant GEORGE PELTZ, a shareholder, was required to report the

corporate income he earned from MJK on his yearly Internal Revenue Service Form 1040, U.S. Individual Income Tax Return.

3. Defendant GEORGE PELTZ kept payments to MJK of less than $10,000 off the books and records of MJK, and he cashed these checks payable to MJK, in the total amount of approximately $1,504,399, at a check cashing service. Defendant PELTZ retained some of the cash for personal use, and used some to pay MJK employees in cash.

4. Defendant GEORGE PELTZ used a corporate credit card issued to MJK to make approximately $101,099 in personal expenditures, all of which constituted income to defendant PELTZ.

5. Defendant GEORGE PELTZ did not inform MJK accountants and his personal tax preparers about the cash he took from MJK, the cash payroll, and the personal expenditures he made with the MJK credit card.

6. From in or about January 2012, through in or about December 2015, in the Eastern District of Pennsylvania and elsewhere, defendant

### GEORGE PELTZ

willfully evaded and defeated, and attempted to evade and defeat, the payment of approximately $336,807 in personal income tax due and owing by him for the tax years 2012, 2013, 2014, and 2015.

In violation of Title 26, United States Code, Section 7201.

## COUNT TWO

### FAILING TO PAY OVER PAYROLL TAXES
### 26 U.S.C. § 7202

**THE ACTING UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 3 of Count One are incorporated here.

2. As an employer, defendant GEORGE PELTZ was required by federal law to collect, truthfully account for, and pay over to the United States, certain payroll taxes. These included MJK employees' withheld federal income taxes ("FIT") and Federal Insurance Contribution Act taxes ("FICA"), that is, Social Security and Medicare taxes. Defendant PELTZ also was required by federal law to report and pay over to the United States, through MJK, a matching amount of the FICA taxes for each employee. During 2012 through 2015, PELTZ failed to pay over $173,040 in payroll taxes.

3. Defendant GEORGE PELTZ paid certain MJK employees cash wages for overtime and weekend work, and he paid other MJK employees cash wages for all work performed for MJK.

4. Defendant GEORGE PELTZ instructed his bookkeeper to report to MJK's payroll service providers only the hours worked by MJK employees during the regular 40-hour work week, excluding all work hours for which MJK employees were paid in cash. Thus, the payroll service provider withheld and paid over to the Internal Revenue Service only the federal income taxes and Social Security and Medicare taxes for the employee wages disclosed to it by MJK, but not the taxes for the cash wages PELTZ paid his employees. Additionally, defendant PELTZ instructed the bookkeeper not to pay over to the United States MJK's matching amount of the FICA taxes that should have been withheld, but were not.

5. Defendant GEORGE PELTZ did not inform MJK accountants and his personal tax preparers about the cash wages he paid to his employees.

6. From in or about January 2012, through in or about December 2015, in the Eastern District of Pennsylvania and elsewhere, defendant

## GEORGE PELTZ

failed to deduct and collect MJK employees' federal income taxes ("FIT") and Federal Insurance Contribution Act taxes ("FICA"), that is, Social Security and Medicare taxes, and willfully failed to account truthfully for and pay over to the Internal Revenue Service, approximately $173,040, which represented MJK employees' FIT and FICA taxes, and the required matching employer-paid FICA taxes, for tax years 2012, 2013, 2014, and 2015.

In violation of Title 26, United States Code, Section 7202.

## COUNT THREE

### THEFT FROM EMPLOYEE BENEFIT PLANS
### 18 U.S.C § 664

**THE ACTING UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 5 of Count Two are incorporated here.

2. The International Brotherhood of Electrical Workers ("IBEW") was a labor union headquartered in Washington, D.C. that represented electricians. Defendant GEORGE PELTZ and MJK employed union electricians who were members of IBEW Locals 98, 351, and 654. The IBEW Local Unions were labor organizations engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(g) of Title 29, United States Code.

3. Defendant GEORGE PELTZ, on behalf of MJK, agreed to be bound by collective bargaining agreements between management and these IBEW Locals. These collective bargaining agreements governed all aspects of the labor-management relationship between MJK and the unions, including working conditions, wages, union dues, employment procedures, and contributions to employee benefit plans.

4. The collective bargaining agreements required MJK: 1) to submit monthly payroll reports to the local unions, which identified MJK's union workers and the hours they worked; and 2) to make contributions on behalf of the employees to various employee benefit plans and funds, based upon those working hours and the workers' pay rate and experience, as set forth in the collective bargaining agreements described above.

5. Each plan and fund was subject to Title I of the Employee Retirement Income Security Act of 1974, ("ERISA"), as amended Title 29, United States Code, Section 1001, *et seq.*, a federal law enacted to protect employee pension and welfare benefit plans and their

participants and beneficiaries by regulating reporting, record keeping, disclosure, and other matters affecting the operations of such plans.

6. Defendant GEORGE PELTZ directed his employees to prepare false monthly payroll reports for the local unions, which identified MJK's union workers but only reported their hours within the regular 40-hour week, not the overtime hours for which defendant PELTZ paid his employees cash, and not the hours of certain employees PELTZ paid entirely with cash. PELTZ also directed that MJK's contributions to the unions' benefit funds be based upon only the reported work hours, not the hours paid in cash. By doing so, PELTZ stole hundreds of thousands of dollars, which he should have contributed to his employees' union benefit plans and funds.

7. During 2012 through 2015, PELTZ failed to pay approximately $468,234 in contributions to union benefit plans on behalf of his union employees.

8. During in or about January 2012 through in or about December 2015, in the Eastern District of Pennsylvania and elsewhere, defendant

**GEORGE PELTZ**

embezzled, stole, and unlawfully and willfully converted to his own use, approximately $468,234 of the moneys and funds of the employee benefit plans of IBEW Locals 98, 351, and 654 which were subject to Title I of the Employee Retirement Income Security Act (ERISA) of 1974, or connected to a fund that was subject to ERISA.

In violation of Title 18, United States Code, Section 664.

## COUNT FOUR

### MAKING UNLAWFUL PAYMENTS TO A UNION OFFICIAL
### 29 U.S.C. § 186

**THE ACTING UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 and 2 of Count Three are incorporated here.

2. Section 302 of the Labor Management Relations Act ("LMRA" or "Taft-Hartley Act"), 29 U.S.C. § 186, prohibited certain financial transactions involving the payment and delivery of money and other things of value from employers and persons acting in the interest of employers to the officers and employees of labor organizations. Employers were permitted to engage in financial transactions with officers and employees of labor organizations, but only if the transaction was "at the prevailing market price in the regular course of business."

3. Local Union 98 of the International Brotherhood of Electrical Workers (hereafter "Local 98") was a labor organization which was engaged in commerce and which represented, sought to represent and would admit to membership, employees who were employed in an industry affecting commerce as those terms are defined in 29 U.S.C. §142 and §152, that is, the electrical construction industry in eastern Pennsylvania. Local 98 Official No. 1, whose identity is known to the Acting United States Attorney, was an officer and employee of Local 98.

4. MJK Electric was an electrical construction employer whose employees were employed in the electrical construction industry, in eastern Pennsylvania and elsewhere, and whose employees Local 98 represented, sought to represent and would admit to membership, pursuant to labor agreements between MJK Electric and Local 98. As the owner and operating officer of MJK Electric, defendant GEORGE PELTZ was a person acting in the interest of employer MJK Electric.

5. Defendant GEORGE PELTZ provided the following things of value, free of

charge, to, or at the request of, Local 98 Official No. 1:

    a.    During 2012 and 2013, MJK Electric purchased and installed a security system, and LED displays, with a retail value of $37,377, in a business partially owned by Local 98 Official No. 1.

    b.    Between January 2012 and July 2016, MJK Electric performed electrical maintenance work, with a value of approximately $2,900, at the home of a relative of Local 98 Official No. 1.

    c.    In March 2014, MJK Electric purchased and installed large screen televisions, with a retail value of $4,207, in the home of Local 98 Official No. 1.

    d.    In December 2015 and January 2016, MJK Electric purchased and installed large screen televisions and a security system, with a retail value of $19,882, in the home of a family member of Local 98 Official No. 1.

    e.    Between April 2013 and April 2016, defendant GEORGE PELTZ gave Local 98 Official No. 1 gift cards and gift certificates worth $5,500 from Boyd's, a clothing store in Philadelphia.

6.    From in or about January 2012 to in or about July 2016, in the Eastern District of Pennsylvania and elsewhere, defendant

**GEORGE PELTZ**

unlawfully and willfully paid, lent and delivered money and other things of value exceeding $1,000, as described in paragraphs 5a through 5e, above, from MJK Electric and persons acting in the interest of MJK Electric to Local 98 Official No. 1, an officer and employee of Local 98,

8

which represented, sought to represent, and would admit to membership, employees of MJK Electric, who were employed in an industry affecting commerce.

In violation of Title 29, United States Code, Sections 186(a)(2) and (d)(2).

*[signature]*
**JENNIFER ARBITTIER WILLIAMS**
**Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515**